Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6600 | **DATE** | 1/31/2003 |
| **CASE TITLE** | Edgewater Foundation et al vs. Tommy G. Thompson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, the cross-motions for summary judgment filed pursuant to FRCP 56 are hereby [10-1], [11-1] denied. This case is remanded to the Department of Health and Human Services for further proceedings consistent with this opinion. This case is terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 0 5 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 24 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TSA courtroom deputy's initials | 03 FEB -4 PM 4:08 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDGEWATER FOUNDATION, successor-in-interest to EDGEWATER HOSPITAL, Plaintiff, vs. TOMMY G. THOMPSON, in his official capacity as Secretary of Health and Human Services, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 00 C 6600 Wayne R. Andersen District Judge |

DOCKETED
FEB 0 5 2003

## MEMORANDUM OPINION AND ORDER

The plaintiff, Edgewater Foundation acting as successor-in-interest to Edgewater Hospital, Inc. ("Hospital"), filed this lawsuit pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, seeking $1,460,735 in interest from the Department of Health and Human Services for what it characterized as late Medicare payments to it. Both parties have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, but both motions are hereby denied. For reasons explained below, this matter is remanded to the Department of Health and Human Services ("HHS") so that a more complete record can be developed before deciding whether the plaintiff is entitled to the relief sought.

Specifically, this Court would benefit from more information regarding the role of Peter Rogan in the underlying transactions, an evaluation by HHS of the integrity of the valuations which triggered the Medicare payment itself, and the circumstances surrounding any reverse

depreciation recapture, or "loss on sale." Although a district court must normally confine its analysis to the administrative record already developed (and both parties have urged this Court to follow that normal practice in this case), the situation is so peculiar that a remand is appropriate.

## ANALYSIS

Edgewater Hospital, Inc. was a not-for-profit hospital located in Chicago, Illinois. Until it was sold in 1989, Hospital was certified as a "provider of services" participating in the Medicare program. Effective January 21, 1989, Hospital sold its assets to three buyers, each of which purchased a defined portion of Hospital's assets. The three buyers were Peter Rogan and two entities in which Rogan was sole shareholder, Edgewater Property Company and Edgewater Operating Company d/b/a Edgewater Medical Center. As part of the Asset Purchase Agreement, Edgewater Property Company purchased Hospital's realty and Edgewater Operating Company bought its furniture and equipment, inventories, medical and employment records, software, contracts, and licenses. Rogan individually purchased Hospital's receivables, including "[a]ll receivables owing . . . as a result of [Hospital's] final cost report filed with the Medicare Program . . ., including any reverse depreciation recapture . . . ." (Administrative Record at 1034.) The parties have characterized this depreciation recapture as the "loss on sale." After the transfer of assets was completed, Hospital merged into plaintiff Edgewater Foundation, an Illinois not-for-profit corporation, as of June 28, 1989.

From what we can discern from the Administrative Record, plaintiff retained the right to receive money Medicare might owe it as a result of underpayments from Medicare to the plaintiff while it owned and operated the hospital. Ultimately, HHS agreed that the plaintiff had been underpaid by approximately $6 million.

2

This underpayment was caused by the alleged under-depreciation of the hospital real estate during the years preceding the sale of the hospital in 1989. Plaintiff (and perhaps Rogan) apparently persuaded HHS that it had been underpaid during the time it operated the hospital because the valuation of the hospital real estate at the closing was less than the accumulated annual depreciation charged as an expense by the hospital. Because Medicare payments were calculated in part by the costs of operating the hospital, the surprisingly low valuation of the hospital at closing, if accepted, created a right to an additional payment.

After the closing on the sale of the hospital, the plaintiff (or the now defunct Edgewater Hospital) submitted a final cost report to HHS for the period ending January 21, 1989. On March 5, 1991, the HHS fiscal intermediary issued a notice of program reimbursement ("NPR"). The NPR showed $6,344,898 due the provider, which consisted largely of the "loss on sale" (or under-depreciation) of the hospital.

However, also on March 5, 1991, the HHS intermediary sent letters addressed to Rogan, as Chief Executive Officer of the defunct Edgewater Hospital, requesting refund of the sums of $2,055,647, $1,399,775, and $476,807. The reason for this request was that Edgewater Medical Center, the for-profit entity that began providing medical services following the January 21, 1989 sale, had been collecting Medicare funds using the same provider number used by its predecessor, Edgewater Hospital. Unfortunately, at the same time that HHS was concluding that it owed money to the plaintiff, it also discovered that it had overpaid Edgewater Medical Center by $3,932,229. HHS then offset the $3,932,229 in overpayments owed by Medical Center against the $6,344,898 in underpayments owed to the plaintiff, resulting in a remittance to the plaintiff in the amount of $2,412,669. After a series of transactions, the plaintiff ultimately

3

received payment of a reduced balance of the $3,932,229, but the source of these funds and the route they took is unclear to this Court.

In its motion for summary judgment, the plaintiff claims that HHS had no right to offset the amounts owed by its successor and, therefore, it claims that the amounts due to it were wrongfully delayed by HHS and that HHS should pay $1,460,736 in interest as compensation for the delay. On the other hand, HHS justifies the application of the offset on the grounds that both Edgewater Hospital and Edgewater Medical Center used the same Medicare provider number and that offsets such as this are specifically contemplated by the Medicare regulations. *See* 42 C.F.R. § 489.18(d).

During oral argument on the issues presented in the motions for summary judgment (i.e. the legal effect of the Medical Center's use of Edgewater Hospital's Medicare provider number and the propriety of HHS's offset of the underpayments against the overpayments), this Court became curious about the identity of the "real" plaintiff. Because the plaintiff itself is apparently a non-functioning, not-for-profit entity without assets, it seemed odd that it would pursue this litigation. Who, for example, was compensating the attorneys for the stellar efforts they have made over a sustained period of time? Apparently, the answer is "Peter Rogan." The Court was advised that Mr. Rogan personally purchased the right to the "loss on sale" from the hospital for $1 million, a transaction for which, we suspect, he was ultimately paid the $6,344,898. Not a bad deal.

Because Rogan controlled both Edgewater Hospital and its successor entity, Edgewater Medical Center, this Court questions the valuation figures upon which the Medicare reimbursement depended. The Court also questions the methodology by which Mr. Rogan paid

the $1 million. If it turns out that the reimbursement was improper, then it would certainly be improper to order the government to pay interest on any late payment of that reimbursement.

Therefore, this Court remands this matter to HHS to determine the following:

1) The legitimacy of the valuations used as a basis for the reimbursement;

2) The role of Peter Rogan in the transactions and the appropriateness of any payments ultimately made to him; and

3) The payors and payees of all Medicare payments made after the closing of the hospital regarding the "loss on sale."

## CONCLUSION

For the foregoing reasons, the cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 are hereby denied. This case is remanded to the Department of Health and Human Services for further proceedings consistent with this opinion. This case is terminated. This is a final and appealable order.

Wayne R. Andersen
United States District Judge

Dated: January 31, 2003